be added to the mandate.

**DAVOUD RAKHSHAN, Plaintiff**

v.

**ASAUA FUIMAONO, Defendant**

High Court of American Samoa
Trial Division

CA No. 96-90

February 25, 1991

Before KRUSE, Chief Justice, TAUANU'IJ, Chief Associate Judge,
VAIVAO, Associate Judge.

Counsel: For Plaintiff, Pro Se
 For Defendant, Pro Se

 Plaintiff Rakhshan claims damages against defendant Fuimaono
for an alleged breach of a services contract.

## I. Factual Background

By way of background, plaintiff is an Iranian national whom the
American Samoan immigration authorities have been attempting, for
some time now, to deport from the territory. In mid-1989, Rakhshan
was ordered by the Immigration Board to depart the territory following
the board's denial of his application for a work permit.[1] Until recently,
Rakhshan has been assisted with his immigration matter by defendant
Fuimaono, who is a practicing attorney. Fuimaono's assistance has
entailed appearances both before the Immigration Board and the
Appellate Division of the High Court,[2] as well as arranging alternative
counsel when he was himself temporarily unable to practice. The parties
were lately personal friends who initially became acquainted through
church meetings. As Rakhshan's immigration problems unfolded,
Fuimaono inevitably extended his hand of friendship by offering his
professional assistance. For all intents and purposes, Fuimaono labored
for his then-friend on a *pro bono* basis.

## II. The Dispute

 Fuimaono had also filed, however, on Rakhshan's behalf, a
collateral civil suit against the government. This suit seeks damages in
the amount of $1 million from the government for what is alleged was

---

[1] *See Rakhshan v. Immigration Board*, 13 A.S.R.2d 25 (1989).

[2] *See Rakhshan v. Immigration Board*, 15 A.S.R.2d 29 (1990).

Rakhshan's unlawful seizure and detention by certain immigration officers. *See* Complaint in *Rakhshan v. American Samoa Government*, CA No. 20-90. According to Fuimaono, the civil suit was filed primarily as a tactical manoeuvre in the hope of gaining some bargaining leeway with the government's unyielding view on the deportation issue --- however, he thought the merits of the suit were dubious. Nevertheless, Fuimaono did not overlook the routine of having Rakhshan the client, execute a "contingency services agreement." It is this contingency agreement which is the basis of the dispute before us.

On August 28, 1990, the complaint in CA No. 20-90 was dismissed by the Court for failure to state a claim, although plaintiff was given the opportunity to file an amended complaint within 10 days. The amended complaint as contemplated by the order was never in fact filed; however, on October 26, 1990, the Court was next alerted to the file by way of a *pro se* motion from Rakhshan requesting an extension of time to file the amended complaint on the ground that his lawyer had abandoned him. Rakhshan's motion was granted on November 23, 1990, over the government's objection, and he was afforded a further ten-day period to file his amended complaint. On November 28, 1990, Rakhshan filed his amended complaint --- albeit a reproduction (with the aid of a copying machine) of the earlier one dismissed.

At the same time, Rakhshan also prepared the *pro se* complaint now before us, which he filed on October 25, 1990. Here, his complaint is that Fuimaono had failed to honor the contingency agreement by failing to refile the amended complaint and omitting to notify him of the that failure.

In his defense, Fuimaono denies withholding information from Rakhshan regarding the non-filing of an amended complaint. He testified that he had met with his client on at least two occasions within the ten-day limitations period, to discuss the merits of the suit. He testified that after the dismissal of the complaint, he immediately undertook further research on the merits of the case and then specifically confronted Rakhshan with his conclusions. In Fuimaono's opinion, neither the law nor the facts were favorable to Rakhshan's case, and he reiterated that the suit was essentially filed as a matter of strategy for employment with the deportation case. He also testified that the complaint in CA No. 20-90 was largely premised upon information given to him by Rakhshan, but after interviewing witnesses in preparation for trial, he said that he found little support for his client's version of the facts. Defendant also said that he had further told his client that he was unable to do anything with the

case, which he considered a "dead horse," and he also urged his client to seek a second opinion on the matter while offering to move, in the meantime, for an extension of time to refile an amended complaint. Fuimaono added that Rakhshan, on the other hand, manifested less concern for strategy and was insisting that he wanted to go forward with the matter. Rakhshan has apparently not only declined the invitation to seek another lawyer but also declined the invitation to drop the case.

## III. Breach of Contract

In terms of a lawyer's contractual obligations to his client, it is generally said that an attorney who undertakes to conduct a legal proceeding promises, among other things, to see the matter through to its conclusion, and he may not withdraw from the suit without the client's consent or without justifiable cause. *See* 7A C.J.S., Attorney & Client § 221.[3] Further, a lawyer who abandons the conducting of a legal proceeding without justifiable cause or the client's consent is generally liable to the client for damages. 7A C.J.S., Attorney & Client § 235.

Notwithstanding Fuimaono's argument --- that the suit, being of doubtful merit, was merely filed as part and parcel of the strategy employed in the immigration case --- we conclude that he had undertaken to prosecute Rakhshan's civil suit to its conclusion, as evidenced by the contingency agreement. When Fuimaono signed the complaint in CA No. 20-90, he thereby certified to the Court, pursuant to Trial Court Rules of Civil Procedure, Rule 11, that he had not only read the pleading, "but [also] that to the best of his knowledge, information, and belief, *there is good ground to support it.*" *Id.* (emphasis added). Indeed, "[f]or a willful violation of this rule an attorney may be subjected to appropriate disciplinary action." *Id.* Furthermore, the very fact that the contingency agreement was not overlooked contradicts this argument. At the same time, the agreement has no bearing whatsoever to the immigration matter.

None having been shown, we also conclude on the evidence that Fuimaono abandoned the conducting of a legal proceeding without

---

[3] *Cf.* ABA (1983) Model Rules of Professional Conduct. Rule 1.16(b) suggests that a lawyer has the "option" to seek a non-consensual withdraw if it can be accomplished without "material adverse affect upon a client's interests." *See* Comment.

reasonable or justifiable cause. Counsel's manner here in simply walking away was exceedingly risky from the client's point of view. Conceivably, the dismissal could very well have become one "with prejudice" had the other side, for example, made a case of plaintiff's non-compliance with the Court's ten-day time limitation period. Even where non-consensual withdrawal might be appropriate under the Model Code of Professional Conduct, Fuimaono nonetheless owed it to his client to take "all reasonable steps" to secure his client's case from "forseeable prejudice" before withdrawing. *See* ABA (1983) Model Code of Prof. Responsibility, DR 210(A)(2). Such steps include "giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitiled, and complying with applicable laws and rules." *Id. See also Kirsch v. Duryea*, 578 P.2d 935 (Cal. App. 1978).

We agree with plaintiff that Fuimaono breached the contingency agreement and is liable to him for any damages thereby arising.

## IV. Damages

Damages, however, have not been proven nor are they apparent on the evidence. The potential harm with a prejudicial dismissal stemming from Fuimaono's failure to refile the amended complaint is now non-existent. Rahkshan is in exactly the same situation he was in prior to dismissal, while his suit is undoubtedly still open to prosecution to its logical conclusion. That is, Fuimaono's conduct has not cost plaintiff anything in terms of the viability of his suit. Thus, no damages are evident in this regard.

A case, however, might be made for damages premised on the argument that the viability of plaintiff's suit today, as compared to its viability prior to Fuimaono's unjustifiable withdrawal, is the difference between prosecution *pro se*, on the one hand, and prosecution by a trained professional, on the other. This argument, however, also presupposes that there are either no other lawyers available in the community to take up plaintiff's case or that there has been no time to arrange for such alternative professional assistance. The evidence points in the other direction. Several months have now passed since plaintiff filed his amended complaint in CA No. 20-90 on November 28, 1990, and we note from that file that a trial setting for March 20, 1991, was ordered *at Rakhshan's request*. It seems quite clear, therefore, that Rakhshan has had more than ample time to arrange substituted counsel.

At the same time, there has been no attempt by Rakhshan to contact other counsel, while his reasons given for not seeking other counsel are that he trusts no other lawyers. These reasons are not only inconsistent with damages but also with the duty to mitigate damages --- if damages are in fact available hereunder.

We fail to find damages, and, therefore, enter judgment accordingly.

It is so Ordered.